UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEFFREY A. WALKER,

                                        Plaintiff,

                vs.                                                9:05-CV-1372
                                                                      (GLS/GJD)

DAVID SNYDER, et al.,

                                        Defendants.

_____

JEFFREY A. WALKER, Plaintiff pro se
BARBARA D. COTTRELL, Asst. U.S. Attorney for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Gary L. Sharpe, United States District Judge pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

        In this amended civil rights complaint, plaintiff alleges that defendants denied

him access to courts, retaliated against him for exercising his First Amendment rights,

and subjected him to cruel and unusual punishment in violation of the Eighth

Amendment. (Dkt. No. 18).  Plaintiff seeks substantial monetary relief.

        Presently before the court is the defendants' motion to dismiss for failure to

state a claim or in the alternative for summary judgment pursuant to FED. R. CIV. P.

12(b)(6) & 56. (Dkt. No. 32).  Plaintiff has responded in opposition to defendants'

motion and has made a separate motion for summary judgment. (Dkt. Nos. 38, 40).

Defendants have replied to plaintiff's opposition to their summary judgment motion,

(Dkt. No. 39), and have responded to plaintiff's cross-motion for summary judgment. (Dkt. No. 42).  For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint in its entirety.

## DISCUSSION

### 1.  <u>Motion to Dismiss or for Summary Judgment</u>

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).  The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).  When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(b).

However, when a plaintiff chooses not to attach or incorporate by reference a

document upon which he solely relies and that is integral to the complaint, the court may take the document into consideration without converting the motion. *Internat'l Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). In order to be "integral" to the complaint, the complaint must rely heavily on the document's terms and effect." *Young v. Lee*, 432 F.3d 142, 146-47 (2d Cir. 2005)(citations omitted). If the court is to consider this type of document, it must be clear that no dispute exists regarding the authenticity or accuracy of the document and that no material dispute exists regarding the relevance of the document. *Falkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). One of the most important considerations is that when considering the sufficiency of a pro se complaint, the court must afford the plaintiff great liberality and apply less stringent standards than when a party is represented by counsel. *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996).

Although in this case, defendants made a motion to dismiss or in the alternative for summary judgment, the plaintiff has cross-moved for summary judgment, and both parties have attached exhibits to their respective motions. Since both parties have moved for summary judgment, this court will consider this as a motion for summary judgment regardless of whether the court could have considered a motion to dismiss based upon documents referenced in plaintiff's amended complaint as well as upon documents of public record.

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990)(citations omitted). "Ambiguities or

inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving  party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

## 2.    <u>Facts</u>

Plaintiff names seven defendants in his amended complaint.  These defendants are David Snyder, a corrections counselor at Federal Correctional Institution (FCI), Ray Brook, where plaintiff was incarcerated at the time of the incidents in this amended complaint.  Plaintiff also names James Cochran, Former Inmate Systems Manager; D.B. Drew, Former Warden at FCI Ray Brook; T.R. Craig, Warden of FCI Ray Brook; D. Scott Dodrill, Regional Director-Northeast Region; Harrell Watts, Administrator - Bureau of Prisons (BOP) Central Office; and Harley P. Lappin,

Director of the BOP.[1]

In his amended complaint, plaintiff alleges that he arrived at Ray Brook in August of 2003 and requested defendant Snyder's assistance in contacting the courts in which plaintiff had pending cases to notify them of his new address and to check the status of these cases. Amended Complaint AC ¶ 15.  Plaintiff appears to be stating that he asked defendant Snyder to assist plaintiff in *telephoning* these courts because the next paragraph of the amended complaint states that defendant Snyder asked plaintiff if he had a letter stating that he needed to use the telephone to contact the courts. AC ¶ 16.  Plaintiff states that defendant Snyder informed plaintiff that he was not going to assist him in "fight[ing] the government or the B.O.P." *Id.*  Plaintiff claims that on September 8, 2003, after he received his property, he was able to send letters to the various courts informing them of his new location and inquiring into the status of his pending cases. AC ¶ 17.

Plaintiff then claims that on September 29, 2003, the Second Circuit Court of Appeals sent plaintiff a copy of an order that had been issued in one of plaintiff's cases, but that defendant Cochran "and others" intercepted plaintiff's legal mail and forwarded it to plaintiff's "Unit Team in Genesee-B Housing Unit." AC ¶¶ 18-19. Plaintiff alleges that defendants Snyder and Cochran "along with others" denied

---

[1] The court notes that it does not appear that defendant Lappin has been served with process in this action. (Dkt. No. 44).  The docket sheet indicates that on March 5, 2007, the Summons was returned "Unexecuted" as to Harley P. Lappin. (Dkt. No. 44).  However, it is clear that defense counsel has moved for dismissal on behalf of all defendants including defendant Lappin. Defendants' Memorandum of Law at 20. (Dkt. No. 29).  Thus, this court will consider the motions as to all defendants.

plaintiff access to courts by intentionally returning the mail to the Second Circuit as "undeliverable." AC ¶ 20. Plaintiff claims that this action led to plaintiff missing a "deadline to [a]ppeal." *Id.*

The next section of the amended complaint alleges that defendants "retaliated" against plaintiff for the exercise of plaintiff's constitutional right to petition for redress of grievances. Plaintiff states that defendants retaliated against plaintiff for filing an action that was pending in the Third Circuit Court of Appeals, *Walker v. Zenk*, 03-3298. AC ¶ 22. Plaintiff claims that defendants retaliated against him by obstructing his access to the Administrative Remedy Process. AC ¶¶ 24-34. Plaintiff also alleges that defendant Snyder destroyed some of plaintiff's legal materials after removing property from plaintiff's cell on September 23, 2005. AC ¶ 39.

Finally, plaintiff alleges that when he was released from the Special Housing Unit (SHU), he was placed in a 12-man cell with one toilet and one sink, also in retaliation for plaintiff's legal activities. AC ¶ 42. Plaintiff claims that the conditions in this housing area were unconstitutional. AC ¶ 42. This court notes that plaintiff states that defendants Snyder and Cochran "started everything." AC ¶ 43. The other defendants are supervisory officials, and their only connections with plaintiff or his claims are the denials of his administrative remedy requests or the affirmances of those denials.

**3.    Applicable Law**

Plaintiff brings this action pursuant to *Bivens v. Six Unknown Named Agents of*

*the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  While section 1983[2] is the jurisdictional basis for actions claiming constitutional violations against persons acting "under color of state law," *Bivens* allows for constitutional claims against *federal* defendants, such as those named in this action. *Id.*

Generally, case law under 42 U.S.C. § 1983 applies to Bivens cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987)(quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)); see also *Butz v. Economou*, 438 U.S. 478, 504 (1978).  Therefore, the cases cited by this court may often contain analysis under section 1983, but the analysis is equally applicable to this *Bivens* action.

## 4.   <u>Official Capacity</u>

Plaintiff has sued defendants in their individual and official capacities.  The United States, as a sovereign, is immune from suit unless it consents to be sued, and in that case, only to the extent of its consent. *United States v. Mitchell*, 445 U.S. 535, 538 (1980)(citation omitted).  A party suing the United States bears the burden of establishing that his or her claims fall within the applicable waiver or consent to be sued. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

An action against federal officers in their "official capacities" is essentially a suit against the United States. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  There is no waiver of sovereign immunity for *Bivens* actions. *See id.* (dismissing a *Bivens* action against federal officials in their official capacities). Thus, to the extent that plaintiff in this case sues the defendants in their official

---

[2] 42 U.S.C. § 1983.

capacities, the amended complaint may be dismissed in its entirety.  The court will proceed to consider the claims as against defendants in their *individual capacities*.

## 5.   Respondeat Superior

The court notes that ***personal involvement*** is a prerequisite to the assessment of damages in both section 1983 and *Bivens* actions, and that *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 439 (E.D.N.Y. 2006)(discussing *Bivens*)(citation omitted).

The required personal involvement of a supervisory officer may be established by direct participation of the official; by his or her failure to remedy the violation after hearing of it through a report or appeal; an allegation that the supervisory official had a "policy" that allowed the constitutional violation to occur; by the officer's gross negligence in supervising subordinates who committed the wrongful acts; or by exhibiting deliberate indifference in failing to act on information indicating that unconstitutional actions were occurring. *See Lonegan v. Hasty*, 436 F. Supp. 2d at 439 (citing *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)).

In this case, plaintiff sues various supervisory officials.  Plaintiff names D.B. Drew, the former warden of Ray Brook; T.R. Craig, the current warden of Ray Brook; D. Scott Dodrill, the Northeast Regional Director; Harrell Watts, the National Inmate Appeals Administrator; and Harley P. Lappin, the Director of the BOP.  Clearly,

8

defendant Lappin had absolutely no personal involvement in any of the allegations made by plaintiff.  Defendant Lappin is in Washington, D.C. and plaintiff has not alleged that defendant Lappin even knows plaintiff's identity or had any contact with plaintiff or his administrative appeals.  Plaintiff states in the amended complaint that he is suing defendant Lappin because he is the "respondent [sic] superior." AC ¶ 9. As stated above, respondeat superior is an insufficient basis for a *Bivens* claim, and the complaint may be dismissed as to defendant Lappin.

The court does note that defendants Drew, Craig, Dodrill, and Watts did personally sign the denials of plaintiff's administrative remedies.  Thus, this court will not recommend dismissal as against these defendants based on lack of personal responsibility but will consider the merits of plaintiff's claims.

**6.** **Access to Courts**

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The Supreme Court has also held that an inmate alleging a denial of access to courts must show ***actual injury*** as a result of the deficient access to courts. *Lewis v. Casey*, 518 U.S. 343 (1996).  The ***cause of the injury*** must be inadequacy of the access.  *Id.* at 351.  Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials. *Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v. Casey*, 518 U.S. at 353).

Plaintiff's first claim is that after his arrival at Ray Brook, he asked defendant Snyder to help him inform the courts that plaintiff had a new address and to help him check the status of his pending cases. AC ¶ 15. Plaintiff apparently wished to telephone the courts, and defendant Snyder told plaintiff that he could only use the telephone for this purpose if he had a letter stating that he should call the court. AC ¶ 16. Plaintiff then states that defendant Snyder told plaintiff that he was not going to help him "fight" the government or the Bureau of Prisons.

Plaintiff's own amended complaint shows that he was not "actually injured" by defendant Snyder's alleged refusal to help plaintiff. In the next paragraph of the amended complaint, plaintiff states that after receiving his property, "plaintiff was able to send letters to the different courts," informing them of his new location and inquiring into the status of his cases. Plaintiff alleges no injury as the result of the denial of the telephone calls. Defendant Snyder's comments, whether they were made or not, had absolutely no effect on plaintiff's pending lawsuits.

Plaintiff alleges that on September 29, 2003, the Second Circuit Court of Appeals sent plaintiff a letter, containing an order on "plaintiff's pending appeal." AC ¶ 18. Plaintiff claims that defendant Cochran "intercepted plaintiff's legal mail" and forwarded it to the plaintiff's Unit Team in Genesee-B housing unit. AC ¶ 19. There is no indication in the amended complaint how plaintiff comes to the conclusion that defendant Cochran, the former Inmate Systems Manager intercepted plaintiff's mail or why he would have sent it to his housing unit. Then plaintiff states that defendants Snyder and Cochran "willfully" returned plaintiff's legal mail to the United States

Court of Appeals, stating that the mail was "undeliverable." AC ¶ 20.  Plaintiff claims

that their actions led to plaintiff missing a deadline to appeal. *Id.*

This court has examined the documents that have been submitted in conjunction

with this claim, and finds that there is ***no injury*** to plaintiff's legal action, ***and*** that

plaintiff has ***misstated the facts***.  The court must first note that it has examined the

envelope that plaintiff states was sent back to the Second Circuit. Plaintiff's Exs.

Attachment B.  Defendants contacted the Second Circuit and requested a copy of the

document and the envelope that was returned to the Second Circuit. Reply Ex. 3.  The

Clerk of the Second Circuit sent back the envelope that was returned, together with

the address to which it was sent, and the document itself. Defendants' Reply Ex. 4.

The envelope sent by plaintiff and the envelope sent by the Second Circuit ***do not***

***match***.  The court notes that the envelope sent by plaintiff states that the reason for the

rejection was "Addressee unknown," while the envelope submitted by defendants ***and***

the Second Circuit docket sheet ***both*** state "Unable to Forward."

The court also notes that based on the docket sheet and the exhibits submitted

by defendants[3] it appears that the Second Circuit may have sent the document in error

to plaintiff at his former facility, Allenwood, even though the docket sheet clearly

shows that plaintiff sent a change of address that was received by the Second Circuit

on September 12, 2003. *Id.* at p.4. *See* Defendants' Reply Ex. 2 (full docket sheet).

---

[3]The exhibit sent to defense counsel by the Second Circuit Clerk's Office contains a copy of the envelope and a second sheet listing the plaintiff's address as "Allenwood."  The address on the envelope is illegible.  The court also notes that the document entitled "Motion Information Statement" contains plaintiff's address as FCI Allenwood apparently because the document is dated August 7, 2003, when plaintiff was incarcerated at Allenwood.

The order about which plaintiff complains may ***never have reached Ray Brook*** and may never have been seen or rejected by defendant Snyder.  If the document did not go to Ray Brook, defendant Snyder could not have rejected it, and he could not have been responsible either for denying plaintiff access to courts or retaliating against plaintiff.  Notwithstanding this fact, the court also finds that even assuming the letter was sent back from Ray Brook, plaintiff has shown no actual injury to a pending action.

The Second Circuit case *United States v. Walker*, No. 01-1674 was plaintiff's attempt to appeal the denial of a 28 U.S.C. § 2255 motion to vacate his criminal conviction. Defendants' Reply Ex. 2.  The appeal was ***not*** of plaintiff's criminal conviction.  A review of the complete[4] Second Circuit docket sheet in this matter shows that plaintiff was actually appealing the denial of a certificate of appealability by the District Court.  On November 5, 2002, the United States moved to dismiss the appeal. Defendants' Reply Ex. 2 at p.6.  The Second Circuit dismissed the appeal on ***July 8, 2003*** and sent notice to counsel and plaintiff at that time. *Id.* at p.7.  On August 7, 2003, plaintiff filed a "motion to recall mandate ('Reconsider'), and on September 12, 2003, plaintiff filed his change of address to Ray Brook. *Id.*

The September 29, 2003 order that plaintiff complains was improperly returned to the Second Circuit was an order denying the "motion to recall mandate."  On September 30, 2003, the notice of the issuance of the mandate was mailed to the

---

[4] The Second Circuit docket sheet for *United States v. Walker*, No. 01-1674 has seven pages. Defendants' Reply Ex. 2.  Plaintiff submitted only one page of the docket sheet with his papers.

parties by the Clerk, and on October 9, 2003, the copy of the September 29 order was returned as "undeliverable." *Id.* at p.8.  Even assuming that the Second Circuit's letter was somehow misdirected, plaintiff's statement that he missed a deadline for appeal is not correct.  Plaintiff missed ***nothing*** since the appeal was dismissed in ***July of 2003***, and the ***September 29 order was a denial of plaintiff's request for reconsideration***.

Although plaintiff states that he received information on February 20, 2004 from the Second Circuit "lead[ing] plaintiff to believe" that he was denied access to the courts, a review of the docket sheet indicates that nothing was sent from the Second Circuit to plaintiff in February of 2004.  The docket sheet shows that on October 28, 2003, the mandate was returned from the district court, and the next entry is for April 7, 2004, stating that the record on appeal was returned to the district court by the Second Circuit. *Id.*  It appears from the docket sheet that nothing was sent to plaintiff between October 1, 2003 and May of 2004, when plaintiff requested information from the Second Circuit. The docket sheet shows that, by letter dated May 11, 2004, plaintiff requested a copy of the envelope that the court used to mail the September 29, 2003 order. *Id.*

The court also notes that a review of the log of plaintiff's legal and certified mail receipts for September and October of 2003 show that plaintiff received approximately forty (40) pieces of legal mail during this time period. Defendants' Ex. 1(l) at pp.1-5.  This legal mail was sent to plaintiff from various courts, including the Third Circuit Court of Appeals, the Southern, Eastern, and Northern Districts of New York, and a Judge's chambers in Virginia. *Id.*  The court also notes that a review of

13

plaintiff's receipts for legal mail shows that on February 20, 2004, he received legal mail from the New York State Supreme Court Chambers and on February 23, 2004, he received legal mail from the United States Court of Appeals in Boston, Massachusetts. Defendants' Ex. 1(l) at p.12.  Neither of these courts would have had any connection to plaintiff's Second Circuit case.  Thus, it is clear that plaintiff suffered no actual injury as the result of plaintiff's legal mail being returned to the Second Circuit.

Plaintiff also alleges later in the amended complaint that on September 23, 2005, defendant Snyder went into plaintiff's cell, packed his belongings, and took them into defendant Snyder's office, where he allegedly sat "reading and destroying a lot of plaintiff's legal files." AC ¶ 39.  To the extent that plaintiff is alleging a denial of access to courts in this claim, he has not specified one file or one case that was actually affected by defendant Snyder's alleged actions.  Thus, plaintiff's access to courts claim may be dismissed as against ***all defendants*** (including the supervisory officials) for ***failure to establish actual injury to any of his pending lawsuits***.

## 7.   Retaliation

Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d

677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court

must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff

must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489,

491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534

U.S. 506 (2002)).

    In this case, plaintiff alleges that defendants retaliated against him because

plaintiff had a lawsuit pending in the Third Circuit Court of Appeals. *Walker v. Zink*,

No. 03-3298. AC ¶ 22.  Plaintiff then relates a history of problems that he has had

filing administrative remedy requests, allegedly due to defendant Snyder's actions.

Plaintiff apparently claims that Snyder was retaliating against him because of

plaintiff's Third Circuit case.  Plaintiff may also be attempting to claim that the initial

misdirection of mail back to the Second Circuit was also in retaliation for plaintiff's

Third Circuit case as was the alleged destruction of plaintiff's legal files.[5]  Plaintiff

also claims that defendants retaliated against plaintiff by placing him in a 12-man cell

upon his release from the SHU. AC ¶ 41.

    Although plaintiff alleges that defendants were retaliating against him because

of a particular Third Circuit case, it is unclear upon what plaintiff bases this

---

[5]The court notes that the misdirection of mail and the destruction of legal files form the
basis for two types of claims.  One claim is the denial of access to courts, but the other claim is a
separate claim for retaliation for the exercise of a constitutional right.  As stated above, any
adverse action taken in retaliation for the exercise of a constitutional right, even if not
unconstitutional in itself may form the basis of a civil rights claim. *Franco, supra.*  This court has
considered defendants' alleged actions in conjunction with **both** types of claims.  Also as stated
above, if the legal mail was not sent to Ray Brook, it could not have been sent back by defendant
Snyder and thus could not form the basis for either a denial of access to courts or a retaliation
claim.

conclusion.  A review of plaintiff's legal mail receipt log shows that during the period

after he was transferred to Ray Brook, plaintiff received a great deal of legal mail.

Defendants' Exs. 1(l)-1(m).  On September 5, 2003, plaintiff received a letter from the

Third Circuit. Defendants' Ex. 1(l) at 2.  This letter was not even given to plaintiff by

defendant Snyder.  There is a different signature in the space for the delivering staff

member's signature.  Plaintiff received another letter from the Third Circuit on

October 1, 2003. *Id.* at p.3.

It is unclear why defendant Snyder would have chosen to base his alleged

retaliation on the action pending in the Third Circuit.  Ray Brook is in Northern New

York, and the Third Circuit letters came from Philadelphia.  Plaintiff's allegation as to

the basis for the retaliation and the nexus between the legal action and defendants'

allegedly adverse actions against plaintiff are ***completely conclusory***.  However, the

court will proceed to examine plaintiff's allegations further to determine whether a

question of fact on the issue of retaliation exists.

A review of the administrative remedy procedure is necessary for an analysis of

the plaintiff's claim.  The administrative grievance procedures for federal prisoners are

contained in 28 C.F.R. §§ 542.10-.19.  The regulations provide that prior to filing a

formal grievance, an inmate must attempt to resolve his complaint informally with

staff. 28 C.F.R. § 542.13 (a).  In order to do this, an inmate must complete a form

known as a BP-8. *See Tyree v. Zenk*, 05-CV-2998, 2007 U.S. Dist. LEXIS 10148, *10-

11 (E.D.N.Y. Feb. 14, 2007).  The regulations do not refer to this particular form, but

it is clear both from the amended complaint and from *Tyree* that this form is referred

to as a BP-8.

If the informal resolution is not successful, an inmate may then file a formal request for administrative relief on a form BP-9. 28 U.S.C. § 542.14(a).  The inmate must file a BP-9 within twenty calendar days of the date upon which the request is based. *Id.*  An inmate "ordinarily" obtains the BP-9 form from his Corrections Counselor. *Id.* § 542.14(c)(1).  The regulations provide that when filing a BP-9, the inmate must include only a "single" complaint or a "reasonable number of closely related complaints" on the form. *Id.* 542.14(c)(2).  An inmate must contain his complaint to the form plus "one letter-size . . . continuation page." *Id.* § 542.14(c)(3).

The twenty-day limit may be extended for good cause, where the inmate demonstrates a valid reason for the delay. *Id.* 542.14(b).  The inmate then generally gives the completed BP-9 to his corrections counselor who submits it to the Warden for review. *Id.* § 542.14(c)(4).  If the inmate is not satisfied with the Warden's response to the complaint, he may file an appeal on Form BP-10 to the "appropriate Regional Director" within twenty calendar days of the date that the Warden signed the response. *Id.* § 542.15(a).  If the inmate is not satisfied with the Regional Director's response, the inmate may file an appeal on Form BP-11 to the General Counsel within thirty calendar days of the Regional Director's signed response. *Id.*  Appeal to the General Counsel is the final administrative appeal available to the inmate. *Id.*

Appeals to the Regional Director and to the General Counsel must also be properly completed, and may contain only the form and one letter-size continuation page. *Id.* §§ 542.15(b)(1)-(b)(3).  At any level of the administrative process, the

17

inmate's submission may be rejected for failure to comply with the regulations or if it is written in a manner that is obscene or abusive. *Id.* § 542.17(a). However, when a submission is rejected, the inmate is provided written notice, explaining the reason for the rejection and if the defect is correctable, the notice will inform the inmate of a reasonable extension of time within which he may resubmit a corrected form. *Id.* § 542.17(b). When an inmate is not afforded the opportunity to resubmit a rejected appeal, he is entitled to appeal the rejection to the next appeal level, and the rejection may be affirmed or the coordinator of the next appeal level may accept the submission for filing. *Id.* § 542.17(c).

When a request or appeal is accepted for processing, the regulations also provide for a response time by the officials. *Id.* § 542.18. Once a request or appeal is filed, the response shall be made in twenty calendar days by the Warden, in thirty calendar days by the Regional Director, and within forty days by the General Counsel.[6] *Id.* Finally, if the time period set forth in the regulations is insufficient for the prison officials to properly respond, the time for response may be extended twenty days at the institutional (facility) level, thirty days at the regional level, and twenty days at the Central Office (General Counsel) level. *Id.* The inmate must be informed in writing of the extension, and staff must respond in writing to requests or appeals. *Id.* Finally, if the inmate does not receive a response within the required time (including any extensions of time), the regulations provide that the absence of a

---

[6] There are exceptions to this time period for emergency applications, not relevant to this case. 28 U.S.C. § 542.18.

response may be considered a denial at that administrative level. *Id.*

Plaintiff in this case, appears to allege that defendants retaliated against him by impeding or delaying his ability to pursue the administrative process.  First, plaintiff alleges that on February 21, 2004,[7] defendant Snyder refused to immediately give plaintiff a BP-8 form for informal resolution of his legal mail issue, instead, he took plaintiff's request and did not give plaintiff the BP-8 for over one week. AC ¶¶ 24, 28. Plaintiff claims that he obtained a BP-8 form from another staff member, and submitted his BP-8 on February 24, 2004. AC ¶¶ 25-26.  Plaintiff then claims that on March 11, 2004, he requested a response to his BP-8 from defendant Snyder who allegedly told plaintiff that Snyder was not going to respond to the BP-8 that he received from the other staff member because plaintiff did not complete the BP-8 that Snyder gave to plaintiff. AC ¶ 27.

Plaintiff states that defendant Snyder then told plaintiff that he did "not give a shit," and was "not tracking it or responding to it." AC ¶ 28.  Plaintiff claims that it was thus that the "informal resolution" of his legal mail claim failed, and the BP-8 was not signed or dated in violation of "42 U.S.C. § 1997(e), 28 C.F.R. § 542.13(a), and P.S. 3420.8(9)(b)(6)." AC ¶ 29.  Plaintiff seems to claim that these actions, including the use of profane language "obstructed justice," impeded access to courts, and rose to the level of retaliation for petitioning the government. *Id.*

Verbal abuse or profane language, as inexcusable as it may be, does not rise to

---

[7] This is the day after plaintiff allegedly determined that the letter from the Second Circuit had been returned in late September or early October of 2003.

the level of a constitutional violation, regardless of whether it might violate a regulation or facility rule. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996). Thus, whether defendant Snyder made these statements or not, and the court is ***not*** making any finding that these statements were made, there was no constitutional violation as a result.

In addition, this alleged conduct by defendant Snyder did not impede plaintiff's access to courts since plaintiff claims no injury to any pending lawsuit as a result of these statements. Finally, although plaintiff implies that defendant Snyder delayed plaintiff's administrative remedy procedure, it is clear that plaintiff subsequently obtained the BP-9 form (the formal application for relief) and submitted the form. Plaintiff does claim that the BP-9 was rejected several times, but it was ultimately accepted and denied by defendant Warden Drew. AC ¶ 31.

It appears that plaintiff's BP-9 was given a number (328156) and rejected twice for non-compliance with the regulations. Defendants' Ex. 1(b) at 15-16. A review of the final BP-9 that was accepted for filing, together with the Warden's response has been filed as Defendants' Ex. 1(c). The court notes that the number of the request that was filed is 328156-F3. The "F3" appears to indicate that it is the "Facility" request, and it is the third request. A review of the administrative remedy request shows that plaintiff complained about the legal mail and about defendant Snyder's alleged misconduct. *Id.*

The warden's response was a denial, but the denial is consistent with what this court has observed regarding the plaintiff's legal mail from the Second Circuit.

20

Defendant Warden Drew states that, according to the envelope, the mail was returned to the Second Circuit by the "USPS" (the United States Post Office), indicating that the postal branch returned the mail to the Second Circuit. *Id.* at p.3. The response also indicates that Program Statements 5800.10 and 5265.11 state that the Warden shall notify an inmate of the rejection of a letter addressed to that inmate, together with the reasons for the rejection. *Id.* An investigation was done of Ray Brook's mail room, and it was determined that the mail room had "no record of receiving and/or rejecting any legal correspondence addressed to you at that time." *Id.* This statement is consistent with this court's finding that the letter appears not to have reached Ray Brook since it appears that the letter went to Allenwood and was returned because the old facility was unable to forward mail to plaintiff's new facility.

Plaintiff's first appeal of defendant Drew's response was rejected for failure to comply with the regulation limiting continuation pages to one page. Defendants' Ex. 1(b) at p.18. Plaintiff was given the opportunity to resubmit, and the second appeal attempt was accepted. The appeal and defendant Regional Director Dodrill's response have been filed as Defendants' Ex. 1(d). Defendant Dodrill's response restates the finding regarding the legal mail and also mentions plaintiff's complaint that he was not permitted to telephone the courts. *Id* at p.3. Defendant Dodrill refers to Program Statement 5264.07 regarding telephone regulations for inmates. The Program Statement states that the inmate must provide documentation to staff in order to support the necessity of a legal call prior to staff approval. *Id.* Since there was no indication that plaintiff had the documentation, the calls were denied. *Id.*

21

Finally, defendant Dodrill denied the plaintiff's claim of misconduct by defendant Snyder in relation to the denial of a BP-8.  Defendant Dodrill states that plaintiff was referred to another counselor because plaintiff's counselor was not present on the day that plaintiff requested the form. *Id.*  Plaintiff appealed this denial to the General Counsel level, and his appeal was rejected once for failure to properly follow the regulations. Defendants' Ex. 1(b) at p.21.  Plaintiff was given the opportunity to resubmit the appeal and it was later accepted. *Id.* at 23.  A copy of plaintiff's appeal and defendant Watts's denial have been submitted by defendants as Ex. 1(e).  Defendant Watts affirmed the denial, citing the same findings as the Warden's  and Regional Director's decisions below. *Id.* at p.3.

Thus, although plaintiff seems to cite technical violations of the regulations in relation to this request and its appeals, there is no indication that plaintiff was prevented in any way from filing his grievance.  The grievance may have been initially rejected for failure to comply with procedures, but plaintiff was always given the opportunity to resubmit.  There is absolutely no basis for plaintiff's claim of "obstruction of justice" or of retaliation for his pending Third Circuit action. Defendants have also submitted copies of the Program Statements to which they refer, one relating to Telephone Regulations and the other regarding Inmate Correspondence. Defendants Exs. 1(j) & 1(k).  The Program Statements support the actions taken by defendants.[8]

---

[8]The court assumes that telephone calls to courts are considered as calls to attorneys since there is no reference in the Program Statement to telephone calls to courts.  The Program Statement provides that frequent confidential inmate-attorney calls should be allowed only when

Defendants have submitted records of plaintiff's grievance regarding defendant Snyder's alleged destruction of plaintiff's legal materials as well as his plaintiff's placement in the 12-man cell. Defendants' Ex. 1(f).  This time, the first grievance was accepted, investigated, and partially granted. *Id.* at 3.  Plaintiff had requested placement in a bottom bunk, and by the time that the administrative remedy request was answered, plaintiff was already in that status. *Id.*

Plaintiff appealed this determination, and defendant Regional Director Dodrill stated that plaintiff's claim that his legal property was destroyed had been referred for investigation.  Defendant Dodrill also stated that plaintiff was not allowed to possess the legal materials of other inmates in his cell, even if plaintiff had been authorized to assist them.  Plaintiff was told that he could submit an administrative claim for loss of property under the Federal Tort Claims Act.  Finally, plaintiff was told that he was placed in the twelve-man cell upon release from SHU in accordance with Ray Brook's procedures, and he would remain there, pending the availability of a two-man cell. *Id.* at p.3.  Defendant Dodrill stated that the housing unit cells met the requirements of the American Correctional Association, and that plaintiff had shown no indication of improper or unsanitary living conditions. *Id.*

Plaintiff appealed the determination of defendant Dodrill, and by the time that plaintiff's National appeal was decided, he had been moved to another facility, and his request regarding the cell-placement was moot. Defendants' Ex. 1(h).  Plaintiff had

---

an inmate demonstrates that communication with his or her attorney by other means is not adequate. PS 5264.07(12).

also complained about the untimeliness of the Warden's response to one of his grievances. *Id.* at p.2.  In the response to the appeal, it was explained to plaintiff that since one of his grievances had been rejected, it was not uncommon for the new grievance to be given a different number.  Defendant Watts stated that the 394924-F1 grievance was not answered because it was not properly filed.

There is no indication that plaintiff's grievances were improperly delayed or denied.[9]  Thus, plaintiff's claims of retaliation are lacking in basis.  There is no indication of how the Regional Director or the National Appeals Administrator would be aware of plaintiff's Third Circuit lawsuit or any other lawsuit brought by plaintiff.  Their affirmances of plaintiff's administrative remedy denials are justified by the regulations.

With respect to plaintiff's claim that he was placed in a 12-man cell in retaliation for his legal actions, again, plaintiff fails to provide a basis for finding that the substantial motivation for the placement was plaintiff's legal action or actions.  Thus, plaintiff's retaliation claims may be dismissed as to all defendants.

## 8.   **Conditions of Confinement**

As a separate claim, plaintiff seems to allege that the conditions in the 12-man cell violated the Eighth Amendment.  The Eighth Amendment does not mandate comfortable prisons, but does guarantee that the conditions in prison will be at least

---

[9] The court also notes that although plaintiff spends a great deal of time in his response to defendants' motion arguing that defendants were incorrect in arguing that plaintiff did not exhaust his administrative remedies (Dkt. No. 39 at 2-9), defendants did not base their motion on failure to exhaust, and defense counsel makes that clear in her reply. (Dkt. No. 39).

humane. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  In order to establish
an Eighth Amendment violation, plaintiff must show that the deprivation was
objectively, sufficiently serious to deprive plaintiff of the minimal civilized measure of
life's necessities, and a sufficiently culpable state of mind on the part of defendant. *Id.*
That state of mind is satisfied if defendant has shown deliberate indifference to
plaintiff's health or safety. *Id.* (citations omitted).

     In this case, plaintiff's main complaint appears to be his belief that the 12-man
cell did not contain sufficient space per inmate as required by the American
Correctional Association.  The court must note that regulatory standards do not set the
constitutional minimum for prisons. *See Bell v. Wolfish*, 441 U.S. 520, 543 n.27
(1979).  In this case, plaintiff also seems to claim, without basis, that his assignment to
a top bunk, notwithstanding the fact that he had a bottom bunk pass, denied him
"essential needs such as sanitation". AC ¶ 42.  Plaintiff also alleges that he was
subjected to poor ventilation, and bad lighting.  Plaintiff does not state how long he
was placed in these conditions and for what portion of the day he was forced to stay in
the housing area.  Plaintiff alleges that these conditions caused him sleeping disorders
and diabetes.  However, there is absolutely no indication that plaintiff's allegations
rise to the level of cruel and unusual punishment.  Thus, plaintiff's claim may be
dismissed as to all defendants.

     **WHEREFORE**, based on the findings above, it is

     **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No.
32) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**, and it is

further

     **RECOMMENDED**, that plaintiff's cross-motion for summary judgment (Dkt.

No. 40) be **DENIED**.

     Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated: March 26, 2007

                                                       Hon. Gustave J. DiBianco
                                                        U.S. Magistrate Judge